MOORE
*vs*
SMITH *et al.*

of the trial to give the defendant time to take down the evidence in a bill of exceptions, and have it signed, provided the right to do so is reserved in reasonable time before the witnesses depart.

---

PET. & SUM.

Case 113.

May 11.

The case stated.

## Moore *vs* Smith *et al.*

APPEAL FROM THE JEFFERSON CIRCUIT.

*Abatement. Joint and several obligors. Jurisdiction.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THIS is a petition and summons brought in the *Jefferson* Circuit Court against four persons as joint and several obligors in a promissory note for fifteen thousand dollars. The summons to *Jefferson* having been returned executed on one and not found as to the others, another summons, afterwards directed to *Scott* county, was returned fully executed; one of the defendants, as to whom the summons to *Scott* had been returned executed, appeared and filed a plea in abatement, averring that the defendant, as to whom the summons to *Jefferson* had been returned executed, was, at the time of the service, a non-resident of *Kentucky*, and that all the other defendants were residents of *Scott* county. The Court overruled a demurrer to that plea, and abated the suit as to all the defendants.

The only question for revision is, whether the facts pleaded authorized the judgment abating the action.

The cause of action being transitory, and the suit being *in personam*, the fact that one of the defendants was in *Jefferson*, and served with process there, gave jurisdiction, as to him, to the Circuit Court of that county, whether he was then domiciled there or elsewhere. Had that defendant been sued alone, therefore, the Court would have had jurisdiction to render a judgment against him.

But the plaintiff, desiring a joint judgment against all the obligors, elected to sue all of them and to have process executed on them in another county, where alone it could have been then served. If that service had been illegal as to them, and did not therefore give the Circuit Court of Jefferson jurisdiction over them, still that very fact might have authorized a sole judgment against the other defendant, although the action was joint; for the plea to the jurisdiction by one on a personal ground, not applicable to another, will not enure to the benefit of that other; and the fact that the Court had jurisdiction as to him would have authorized a judgment against him alone, by entering a *non pros* as to the others, unless he too had then pleaded in abatement; and even if he had so pleaded a replication that the other joint obligors were not sueable in the same county would have been good. Consequently, if the plea in this case had been available to the party filing it, the judgment abating the action as to all was not proper.

But we are of the opinion that the facts pleaded did not authorize an abatement even as to the party pleading.

The 10th section of an act of 1796, provides that "when two or more persons are bound jointly or jointly "and severally in any bond or writing obligatory, and the "persons so bound shall reside in different counties, it "shall be lawful for the Clerk of the Court *where the suit* "*is brought* against one of the obligors to issue a *capias* "*ad respondem* against the other obligor or obligors, di-"rected to the Sheriff of the county where they may re-"side:" (*Stat. Law*, 342.)

The 4th section of an act of 1812, (*Ib.* 343,) enacts "that in every species of personal action where there are "more than one defendant, the plaintiff commencing his

Moore
*vs*
Smith *et al.*

One of several joint and several obligors may be sued in any county where he is found—and a plea to the jurisdiction of the Court on a *personal* ground, applicable to one defendant, is not available for another def't.—

—If two or more are sued and one avail himself of a matter of abatement, applicable to him alone, it is error to abate the suit as to the other defendants.

Where two or more are jointly and severally bound, the action is transitory, and they may be sued in any county in the State where either may be served with process, and process or alias process sent to the counties where the other defendants may be found.

"action in the county where either of them *resides*, "may issue any writ or writs to any county where the "defendants or any of them *may be found: provided*, "that should a verdict not be found against the defendant "or defendants resident in the county where the action is "commenced, judgment shall not be rendered in such "action."

And the 6th section of the same statute authorizes a judgment against one on a return of no inhabitant, as to another in an action against both on a joint obligation.

None of these enactments should, in our judgment, be restricted to suits brought in the county of the *domicil* of one of the obligors. The statute of 1796 applies to any county in which *the suit shall be brought*, and in which, of course, the Court has jurisdiction, according to the common law—that is, any county where a defendant may be served with process. This is its literal import: and we can perceive no reason for presuming that the Legislature intended any thing else. There could have been no motive for changing the common law as to jurisdiction in transitory actions, and conferring it in cases of joint obligation, to a county in which one of the obligors is domiciled.

The statute of 1812 should not be construed as repealing or modifying, in that respect, the prior enactment of 1796, or as restricting a joint suit to a county of the domicil of some one of the defendants. It was, as may be presumed, enacted merely for the purpose of extending the former statute to all joint personal actions, and of preventing abuse by inserting the *proviso*. There could have been no consistent motive for requiring the suit to be brought in the county of the domicil of one of the defendants, when it authorizes the issuing of process as to another, to any county where he may happen at the time to be. And moreover we can perceive no motive for intending to change the jurisdiction in such cases more than in the case of a several action *in personam* against a sole obligor. A liberal interpretation of such beneficially remedial statutes is peculiarly proper; and the word *"reside,"* in the act of 1796 and the collocat

The statute of 1796 applies the jurisdiction to any county in which the suit may be brought, leaving the jurisdiction according to the common law, which is not repealed by the statute of 1812, nor does it restrict a joint suit to the domicil of one defendant.

in that of 1812, may, without absurdity, be so understood as to be perfectly consistent with the context and presumed object of each enactment as we understand them. The Legislative intent may be supposed to have been, that if suit should be brought, where, according to law it might be instituted, that is, in any county where any defendant was *actually living*, or, in other words, residing *at the moment*, and could be served with notice, process might be issued against any other co-defendant to any other county where he might, in like manner, happen to be at the time; and this appears to us to be the only useful and consistent interpretation—otherwise, if two joint obligors, domiciled in another State, should be sojourning in Kentucky for a season, each for example, in a different county, *both could not be sued*, because no suit could be brought in the county in which either of them resided, interpreting *residence* as synonimous with *domicil*.

We are satisfied that *"residence"* was not intended to mean necessarily the fixed and permanent habitation, but actual cormorancy at the date of the service of process.

But whatever may have been the original legislative intent, the practical construction has ever been, that if one of several defendants shall be served with process in the county in which the suit is instituted, other process may be issued to any other County where any or all of the other defendants may be found.

And such an interpretation is so obviously reasonable and useful, that had any other been established by practice, we cannot doubt that it would have been corrected by the Legislature; and consequently, this practical construction as hitherto given and sanctioned by the Legislature should alone, in such a case, settle all judicial question as to the effect of those enactments.

We are, therefore, of the opinion that the creditor in this case, having a right to sue in Jefferson, where process was executed on one of the defendants, had a legal right to send process to the county of *Scott* against the other defendants, and that consequently the Circuit Court of Jefferson had jurisdiction as to all of the defendants.

MOORE
*vs*
SMITH *et al.*

The statute of 1812 (*Stat. Law,* 343,) does not change the common law jurisdiction in regard to suits on joint or joint and several obligations, and the term *resides*, used in the 4th section, means wherever the defendant may be found and served such process, tho' not the actual domicil.

It is, therefore, considered that the judgment of the Circuit Court be reversed and the cause remanded with instructions to sustain the demurrer to the plea in abate. ment.

*Guthrie* for appellant.